RECEIVED
IN ALEXANDRIA, LA.

MAY 2 3 2014

TONY R. MOORE, CLERK
BY_____
         DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

ELTON DUFOUR                          DOCKET NO.: 1:13-cv-01041

VERSUS
                                      JUDGE JAMES T. TRIMBLE, JR.
CAROLYN W. COLVIN                     MAGISTRATE JUDGE JAMES D. KIRK

### REPORT AND RECOMMENDATION

Before the court is a complaint filed by Elton Dufour ("Dufour") against the Acting Commissioner of the Social Security Administration ("Commissioner"). Dufour seeks judicial review of the Commissioner's final decision in which he was found liable for an overpayment of disability insurance benefits ("DIB").

Dufour claims the ALJ erred in the following respects:

1. The ALJ committed an error of law in declining to average the monthly earnings for purposes of determining whether the claimant's work constituted substantial gainful activity ("SGA"); and

2. The ALJ improperly disregarded the claimant's income related work expenses ("IRWE").

### Pertinent Facts

Dufour was found disabled as of August 1, 1997 (R. 150). He received his first DIB payment in January, 1998 (R. 150). In June 1999, Dufour began working which triggered his trial work period ("TWP") (R. 123). Dufour's TWP ran from June 1999 through September 2001 (R. 20, 34).

In October 2001, Dufour's 36 month period of re-entitlement[1] began. The period of re-entitlement ceased October 2004 but Dufour continued to work and receive DIB payments until October 2006 when the Social Security Administration ("SSA") determined he engaged in substantial gainful activity ("SGA") and was no longer disabled. SSA continued to pay Dufour benefits in October, November and December 2006. His benefits were to cease January 2007 but Dufour continued to receive and accept DIB payments throughout the year (R. 20-22).

On February 10, 2008, Dufour filed for expedited reinstatement ("EXR") of benefits. SSA approved the request and deemed his reinstatement date to be March 2008 (R. 30, 49-51, 82-84). SGA was evaluated monthly since Dufour was in an initial reinstatement period. Ultimately, the SSA determined Dufour engaged in SGA in May, June, July and December 2008.

The SSA then issued a letter seeking reimbursement for undue benefit payments made from January 2007 through December 2008.

### ALJ's Findings

The ALJ issued a decision on July 6, 2011 and concluded Dufour was "overpaid benefits in the amount of $13,961.30 for the period January 1, 2007 to December 31, 2008." (R. 6-8). In reaching the conclusion, the ALJ found Dufour was not entitled to any payments in 2007 because his disability ceased October 2006 and his benefits

---

[1] Also known as the extended period of eligibility.

ceased January 2007. The ALJ further found Dufour was not owed a benefit in May, June, July and December 2008 because he engaged in SGA.

The ALJ indicated Dufour entered into the 24 month initial reinstatement provision ("IRP") when his DIB status and payments were reinstated in 2008. Under IRP, Dufour could not receive benefits for any month in which he engaged in SGA. When determining whether a claimant engaged in SGA during the IRP, the averaging of earning was not applicable. Without the benefit of averaging, Dufour's earningins in May, June, July and December 2008 exceeded the threshold amount. Accordingly, he was determined to have engaged in SGA those four months and was not owed a benefit in either May, June, July or December 2008.

With respect to impairment related work expenses ("IRWE"), the ALJ found that Dufour failed to "establish that the cost of the items or services he claim[ed] as expenses were required and used to enable him to work." (R. 8). Further, she found that Medicare Part B premiums did not qualify as IRWE. Accordingly, she did not deduct the submitted expenses from the 2008 earnings.

Scope of Review

When considering Social Security appeals, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether substantial evidence exists in the record to

support the Commissioner's decision and whether there are any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Smith-Richardson v. Perales, 402 U.S. 389, 401 (1971). It must be "more than a scintilla and less than a preponderance." Id.

Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority to set aside factual findings that are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. To make a finding that substantial evidence does not

exist requires courts to conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Law and Analysis

In support of Dufour's argument that his 2007 earnings should be averaged, he cites 20 C.F.R. §404.1574a. In response, the Commissioner argues the averaging of wages and a determination regarding SGA is a non issue because Dufour was not entitled to benefits during 2007. I agree with the Commissioner.

20 C.F.R. §404.1574a, sets forth those occasions when the SSA will average a claimant's earnings. The regulation is clear that this is done when a disabled person is working. Once the average earnings are calculated, the SSA uses the amount to determine if the person engaged in SGA. In the instant matter, Dufour was not considered disabled at any time during 2007 so there was no need to average his earnings nor determine his SGA. He was not entitled to a single benefit during that year; thus, he is responsible for the repayment of all benefits collected during that time (R. 20-22).

Dufour does not appear to raise the issue of averaging with respect to his 2008 earnings; however, the issue was raised at the Social Security level and the Commissioner addressed the issue in the opposition to Dufour's appeal. Accordingly, out of an abundance of caution, I too will address the argument.

5

The argument that the earnings from 2008 should be averaged is legally inaccurate in light of 20 C.F.R. §404.1574f which provides in relevant part:

> When we determine if you have done substantial gainful activity in a month during the initial reinstatement period, we will consider only your work in, or earnings for, that month. We will not apply the unsuccessful work attempt provision of §§404.1574(c) and 404.1575(d) or the averaging of earnings provisions in §404.1574a.

20 C.F.R. §404.1592f(d). The regulation specifically states that averaging of wages does not apply. Accordingly, substantial evidence supports the finding of the Commissioner that Dufour's 2008 earnings should not be averaged and that he is liable for repayment of benefits received in May, June, July and December 2008.

The second issue raised by Dufour is whether impairment related work expenses ("IRWE") should be deducted from his earnings before determining whether he engaged in SGA. Dufour contends the ALJ erred by finding the expenses submitted "amounted to nothing more than 'ordinary and necessary expenses'". (Doc. 11, p.5, citing R. 8). He argues that he paid for medications, work shoes and Part B Medicare payments which allowed him to work. He argues that he submitted evidence of these expenses and that even though they happened to be items needed to carry out daily functions that were unrelated to work, the expenses were still allowed as IRWE pursuant to 20 C.F.R. §404.1576(f)(6). Thus, they should be deducted from his earnings.

6

The regulations state "reasonable costs...of certain items and services which, because of your impairment(s), you need and use to enable you to work" may be deducted from ones earnings before determining substantial gainful employment. 20 C.F.R. §404.1576. Additionally, 20 C.F.R. §404.1576(b) sets out four conditions which must be met before IRWE may be deducted. Chief among them is "the severity of your impairment(s) **requires** you to purchase (or rent) certain items and services in order to work." 20 C.F.R. §404.1576(b)(2). (Emphasis added). Dufour fails to argue, much less prove, that his medications, work shoes and Part B Medicare premiums were *required* for him to work *due to his impairments*. In fact, Dufour fails to set forth what his impairments are and or why the medications, shoes and premiums are required to return to work.

Also lacking is proof that the evidence submitted reflects payments made for the allegedly required items and/or services. There are no receipts or invoices showing the checks correlate with the items or the alleged amounts so the cancelled checks are nothing more than evidence of payment for "ordinary and necessary expenses". Accordingly,

**IT IS HEREBY RECOMMENDED** that Dufour's appeal be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to

another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before making a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this 23rd day of May, 2014.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE